# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**TRACY L. DEBTER**                                                                                   **PLAINTIFF**

**V.**                                   **NO. 3:24-CV-00109 BSM-JTK**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                                            **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. **Introduction:**

Plaintiff, Tracy L. Debter ("Debter"), applied for Title II disability insurance benefits on May 12, 2020, alleging a disability onset date of March 20, 2020. (Tr. at 13). The application was denied initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") denied her application by written decision, dated August 30, 2023. (Tr. at 13-27). On May 16, 2024, the

Appeals Council declined to review the ALJ's decision. (Tr. at 1-6). Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Debter has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision denying benefits.

## II.  The Commissioner's Decision:

Debter meets the insured status requirements of the Social Security Act through June 30, 2026. (Tr. at 15).

The ALJ found that Debter has not engaged in substantial gainful activity since the alleged onset date of March 20, 2020.[1] (Tr. at 16). At Step Two, the ALJ found that Debter has the following severe impairments: degenerative disc disease; fibromyalgia; diabetes mellitus type II; history of colon cancer status post right hemicolectomy, in remission; bilateral carpal tunnel syndrome, status post release 2022; cubital tunnel syndrome, status post left cubital tunnel release; and elevated body mass index. *Id.*

After finding that Debter's impairments did not meet or equal a listed

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

impairment (Tr. at 18-19), the ALJ determined that Debter had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional restrictions: (1) she can no more than occasionally balance, stoop, kneel, crouch, and crawl; and (2) she can handle and finger frequently, but not constantly. (Tr. at 19).

The ALJ determined that Debter is capable of performing past relevant work as an order clerk, cashier II, medical assistant, and vocational instructor. (Tr. at 25). At Step Five, the ALJ relied upon the testimony of the Vocational Expert ("VE") to find that, based on Debter's age, education, work experience and RFC, jobs also existed in the national economy that she could perform. (Tr. at 25-27). Therefore, the ALJ found that Debter was not disabled. *Id*.

### III. Discussion:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

3

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B.  Debter's Arguments on Appeal

Debter contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ erred at Step Two in his characterization of severe impairments; (2) the RFC did not incorporate all of Debter's limitations; (3) the ALJ failed to properly evaluate Debter's abilities to perform daily activities; and (4) the ALJ did not properly analyze two of the medical

4

opinions. The Court finds support for Debter's third and fourth arguments.

The ALJ recognized that Debter suffered from a variety of impairments. She noted severe back, shoulder, neck pain, and hand pain, for which Debter received physical therapy. (T.r at 21, 62). Her pain doctor recorded a positive straight leg raise in September 2020; her doctor also diagnosed chronic pain syndrome and increased her pain medication. (Tr. at 445-446). The doctor noted that Debter had failed conservative therapy for pain. (Tr. at 439). A consultative psychiatric examiner wrote that Debter's symptoms were physical rather than psychological, but that she had "severe and chronic systemic pain." (Tr. at 947). The ALJ noted that Debter experienced side effects from pain medication. (Tr. at 21. 62). Debter also said that she got headaches two to three times a week, and that she threw up when she got them. (Tr. at 21, 58-59). Due to a colon resection surgery, Debter said she had difficulty eating. (Tr. at 54).

Debter is correct that the ALJ mischaracterized Debter's daily activities. When Debter completed a functional report for her claim, she said she stayed in bed to read and that her fiancé helped her with everything. (Tr. at 330-334). She could not cook meals or help with chores around the house, and she had pain when performing personal care. *Id*. She shopped in stores only when she went with her

fiancé. *Id*. Debter reiterated her difficulty with daily activities at the hearing.[2] (Tr. at 52-55). The state-agency medical expert also noted her inability to perform many daily activities. (Tr. at 87). So did the psychological examiner. (Tr. at 947).

Still, given this evidence, the ALJ wrote that Debter "is able to engage in many significant activities of daily living." (Tr. at 21). The record does not support this statement. Here, the ALJ cherry-picked evidence to support her conclusions; this is disallowed in these cases. See *Clarambeau v. Saul*, No. 4:19-CV-04170-VLD, 2020 U.S. Dist. LEXIS 102414 at *98 (D.S.D. Jun 11, 2020). Furthermore, a proper reading of a claimant's daily activities is important to an ALJ's determination of whether a claimant can perform work. See *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) ("the fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not consistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work").

Debter also argues that the ALJ failed to properly evaluate the opinions of her PCP, advanced practice nurse, Kristie Branscum. Nurse Branscum saw Debter several times in 2022 and 2023. She diagnosed acute back pain, diabetes, and hypertension, among other things. (Tr. at 1078). She made note of Debter's

---

[2] At the hearing, Debter admitted that she was able to work some as a cashier, but that her employer gave her multiple accommodations and she could leave work when she needed to, due to pain. (Tr. at 54-55).

complaints of pain and her medications. (Tr. at 1068-1080). Nurse Branscum filled out two medical opinions in April 2023. (Tr. at 1314-1323). She opined that Debter could not perform even sedentary work, and that she would need a cane or assistive device. (Tr. at 1321). Nurse Branscum said that Debter would miss more than four days of work per month, and that she would need unscheduled breaks throughout the day. (Tr. at 1320-1322).

The ALJ mentioned these opinions but did not perform the required analysis.[3] He merely said that the opinion of the state-agency medical expert, Herbert Meites, M.D., was more persuasive than the opinion of Nurse Branscum. (Tr. at 24). Dr. Meites opined that Debter could perform light exertional work, but he did not say she would need breaks or miss work. (Tr. at 84-86). In finding Dr. Meites opinion persuasive, the ALJ again stated that Debter could perform a variety of daily

---

[3] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 U.S. Dist. LEXIS 110370 at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*. Both supportability and consistency should be discussed when an ALJ evaluates the persuasiveness of a medical opinion. *Bonneau v. Saul*, No. 3:20-CV-00095-PSH, 2021 U.S. Dist. LEXIS 44605 at *5, (E.D. Ark. Mar. 10, 2021).

activities, ignoring Debter's own testimony. (Tr. at 24). Moreover, the ALJ did not discuss any medical evidence when he cited to Nurse Branscum's opinion, and she did not address consistency or supportability of the opinion. Therefore, reversal is warranted.

### IV. <u>Conclusion</u>:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred in how he evaluated both Debter's daily activities and the opinion of Nurse Branscum.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review.

DATED this 13th day of November, 2024.

_____
UNITED STATES MAGISTRATE JUDGE